United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAPCONVERT, LLC,
Plaintiff,
v.
BENJAMIN BROWN, et al.,
Defendants.

Case No. 26-cv-02149-CRB (ASK)

**ORDER RE: CAPCONVERT'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE FOUND IN CONTEMPT**

Re: Dkt. No. 45

By way of this lawsuit, Plaintiff Capconvert, LLC ("Capconvert"), sued its former employee, Benjamin Brown, and his new company, Signyl LLC ("Signyl"). Brown allegedly began secretly developing Signyl—a company that competes with Capconvert—even before he left Capconvert. Capconvert alleges that Brown and Signyl misappropriated Capconvert's trade secrets and confidential information. Dkt. 1.

Shortly after filing suit, Capconvert obtained a temporary restraining order ("TRO") enjoining Defendants "from interacting with, using, disclosing, or making available" any Capconvert information or any bots developed, trained, or prompted using or with reference to Capconvert information. Dkt. 21 at 2. The TRO also ordered the forensic imaging and analysis of "Defendants' cloud accounts and personal devices." *Id*.

Since then, Capconvert claims that Defendants have violated the TRO in multiple ways. Capconvert contends that Defendants "refused to allow the forensic analyst to image their Mac Mini, have continued using bots developed, trained or prompted using Capconvert's materials, and have continued interacting with and using Capconvert's materials through their bots and AI agents, all in violation of the TRO." Dkt. 45 at 11. Accordingly, Capconvert moved for an order to show cause as to why Defendants should not be held in contempt of the TRO. Dkt. 45. As relevant here, Capconvert requests a compensatory award for the attorney's fees and costs it incurred in

preparing, filing, and defending its motion for an order to show cause.[1]

Having considered the papers, and with the benefit of oral argument on July 15, 2026, the Court **FINDS** that Defendants may be held in civil contempt for violating the TRO by (1) resisting the forensic examination of Defendants' Mac Mini from May 12, 2026, to May 22, 2026, and (2) continuing to operate AI agents that either (a) were developed using or with reference to Capconvert's information, or (b) had ongoing access to Capconvert's information.

## I. DISCUSSION

"A Court may hold a party in civil contempt when the party has displayed disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 539 (N.D. Cal. 2019) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (cleaned up)). "A party's behavior need not be willful to justify a finding of civil contempt." *Id.* (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (cleaned up)). "There is no good faith exception to the requirement of obedience to a court order." *Id.* (cleaned up). "Substantial compliance is a defense to civil contempt that exists where there are a few minor violations despite the fact that every reasonable effort has been made to comply." *Id.* (cleaned up). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014).

"An award of attorney's fees for civil contempt is within the discretion of the district court." *Harcourt Brace Jovanovich Legal & Pro. Publications, Inc. v. Multistate Legal Stud., Inc.*, 26 F.3d 948, 953 (9th Cir. 1994) (citing *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376,

[1] At the hearing on July 15, 2026, Capconvert withdrew its request for nonmonetary sanctions. Additionally, in its papers, Capconvert requested a coercive daily fine intended to compel Defendants' compliance with the TRO. Capconvert, however, did not substantively pursue that form of monetary sanction at argument. Nor does a fine seem appropriate, given that Defendants have already submitted the Mac Mini for imaging and appear willing to negotiate with Capconvert about how to proceed with their business in a manner that steers clear of Capconvert's alleged trade secrets or other protected information. Accordingly, the Court declines to impose a coercive fine on mootness grounds, but does so without prejudice, given that the facts are still developing.

1380 (9th Cir.1986)). "Sanctions for civil contempt may be imposed to . . . compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior." *Gen. Signal Corp.*, 787 F.2d at 1380. Courts have "emphasize[d] that attorneys' fees are an appropriate component of a civil contempt award." *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003). "[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Inst. of Cetacean Rsch.*, 774 F.3d at 958 (cleaned up). However, "[c]ompensatory awards are limited to "actual losses sustained as a result of the contumacy.'" *Gen. Signal Corp.*, 787 F.2d at 1380 (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)).

**A. Production of the Mac Mini for Forensic Imaging**

Capconvert's first basis for contempt is Defendants' refusal to produce their Mac Mini from May 11, 2026, when Capconvert demanded to image the Mac Mini, up until May 22, 2026, when Defendants agreed to produce the Mac Mini for imaging.

Although Mr. Brown first produced the Mac Mini for forensic analysis in March 2026, the device was returned without imaging, admittedly due to no fault of Mr. Brown's. Dkt. 59 at 4; *see* Dkt. 43-4 at 25. Capconvert later circled back to the issue on May 11, 2026, and demanded to image the Mac Mini. Defendants responded the next morning, resisting production of the Mac Mini on the grounds that Capconvert had not identified "what unique, non-cumulative evidence . . . exists on the Mac Mini[.]" Dkt. 57-5 at 9. This resistance caused Capconvert to file the instant contempt motion on May 21, 2026.

On the next day, May 22, 2026, Defendants capitulated. Their about-face was not necessarily occasioned by the contempt motion, but more likely because they were before the Court on the preliminary injunction motion arising out of the TRO and because the Court in fact issued a preliminary injunction shortly after the hearing. Dkt. 50 at 2 (directing Defendants, as part of the preliminary injunction, "to cooperate in the inspection and imaging of Brown's devices, <u>including Brown's 'Mac Mini[.]</u>'"(emphasis in original)). Defendants ultimately produced the Mac Mini for forensic analysis on May 27, 2026. Dkt. 57-5 ¶ 4. Capconvert now seeks

"compensatory sanctions for the fees and costs Capconvert incurred due to Brown and Signyl's refusal to comply with the TRO"—specifically, the costs associated with preparing and prosecuting its motion for contempt. Dkt. 64 at 6.

The TRO required the parties "to engage a forensic analyst approved by both parties . . . to image Defendants' cloud accounts and personal devices." Dkt. 21 at 2. To be sure, Defendants acted appropriately at the outset by producing the Mac Mini to Capconvert's forensic analyst for imaging on March 27, 2026. But that proper conduct was later overwritten by their improper apparent refusal to produce the device unless Capconvert could identify trade-secret information "uniquely present on the Mac Mini[.]" Dkt. 57-5 at 6-7. Defendants' unilateral imposition of this requirement blatantly violated the clear terms of the TRO, which allowed Defendants no such basis to resist the imaging of the device. Defendants' unilaterally imposed condition was also unreasonable, as Capconvert would have no way of knowing whether the Mac Mini contained unique information without imaging and inspecting it. Because Defendants lacked any legitimate basis to withhold the Mac Mini after entry of the TRO, Defendants violated the TRO by resisting the forensic examination of the Mac Mini as of May 12, 2026—thus necessitating the filing of Capconvert's contempt motion on May 21, 2026.

**B. Continued Use of Capconvert Materials**

Capconvert's second basis for contempt is that Defendants continued to use Capconvert materials, as well as bots or AI agents trained on those materials, since the entry of the TRO. Capconvert maintains that, "[a]ll 14 of Signyl's [machine learning ("ML")] models – models which Brown and Signyl continued to use after the entry of the TRO – were developed, trained, and backtested using Capconvert's confidential" information. Dkt. 64 at 8. In support, Capconvert submits a declaration from an expert who, after reviewing the forensic images of Mr. Brown's MacBook Air, opined that the AI assistants, namely OpenClaw and Claude, which Mr. Brown used to develop Signyl's ML models, had access to Capconvert's information as recently as March 27, 2026. Dkt. 43-5 ¶¶ 20-24, 30.

Mr. Brown characterizes any post-TRO interaction with Capconvert's materials as "stop-work and residual self-audit artifacts, not affirmative use by [Mr. Brown] of Capconvert

materials." Dkt. 57-4 ¶ 7. But the TRO is not limited to affirmative use—it enjoins all use. Dkt. 21 at 2. Mr. Brown admits that his AI agents continued to audit their own sessions using Capconvert information as part of a "background process remaining alive" until late March, even after Mr. Brown "instructed" the agents to stop. Dkt. 57-4 ¶¶ 23-26. He swears that, "[a]fter the TRO entered, on March 18, 2026, [he] instructed [OpenClaw]" to "'Disable all crons,' 'Stop working,' and 'DISABLE ALL CRONS[.]'" *Id.* ¶ 24. But, even after his "March 18 shut-down order," OpenClaw continued to access and use Capconvert confidential information. *Id.* ¶ 25.

Mr. Brown attempts to distinguish ***his AI agents*** using and having access to Capconvert's data, on the one hand, and ***his own personal*** affirmative violation of the TRO on the other:

> That is the agent checking its own past behavior. It is not a prompt by me, a file read I directed, a model run, a client deliverable, or any use of Capconvert data. A background process remaining alive, a scheduled self-audit firing, and a deleted session file are residue of a system I had repeatedly ordered shut down, not post-TRO use of Capconvert materials by me.

*Id.*; *see also id.* ¶ 27 ("The agent, acting on its own and without any instruction from me to use a Capconvert credential, attempted to use a [Capconvert credential]."). Mr. Brown makes multiple variants of this same argument. *See id.* ¶ 18 (claiming that he "did not train machine-learning model weights on Capconvert client data" because "[t]raining – changing model weights or parameters based on data – is different from testing, backtesting, inference, prototype scripts, file paths, notes, and historical files."); *id.* ¶ 23 (stating that, "[a]fter the TRO entered, [he] did not give the agents any instruction to use Capconvert materials."); *id.* ¶ 15 (stating that he "did not run, query, test, deploy, or use [tooling based on Capconvert data] for any client or for Signyl after [he] left Capconvert[.]").

The problem with Mr. Brown's contention is that the TRO expressly prohibited him from using "any bots (a) developed, (b) trained, or (c) prompted (i) using, or (ii) with reference to, any" Capconvert confidential data. It was Mr. Brown's obligation to refrain from using any AI agent that had previously used Capconvert data, and he nevertheless did so. Accordingly, the distinction he draws between his actions and the actions of his AI agent rings hollow.

The fact that Mr. Brown—as his counsel admitted at argument—is merely a lay person,

United States District Court
Northern District of California

unqualified to provide expert testimony only bolsters the Court's belief that Mr. Brown acted in disregard of the Court's order. As Mr. Brown's counsel acknowledged at argument, there is nothing in the record to suggest that Mr. Brown consulted a technical expert—or anyone else—to verify that his proposed manner of complying with the TRO would be satisfactory. It is self-evidently problematic for a litigant subject to a court's order to advance a technical argument as to how he complied, while simultaneously admitting that he lacks technical expertise. The Court fairly expects that litigants take their compliance obligations more seriously.

Because Defendants have continued to operate AI agents that had access to and used Capconvert information, Defendants violated the TRO's prohibition on using bots developed using or with reference to Capconvert data.

## II. CONCLUSION

For the reasons explained, Defendants may be held in civil contempt for violating the TRO by (1) resisting the forensic examination of Defendants' Mac Mini from May 12, 2026, to May 22, 2026, and (2) continuing to operate AI agents developed using or with reference to Capconvert's information, along with the AI agents with ongoing access to Capconvert's information.

Capconvert's motion for an order to show cause as to why Defendants should not be held in contempt of the TRO is thus **GRANTED**. Dkt. 45. By **August 24, 2026**, Defendants shall either (1) stipulate to the amount of a civil contempt award to compensate Capconvert for the attorneys' fees and costs it incurred in preparing, filing, and pursuing its motion for an order to show cause or (2) file a response explaining why—aside from the reasons that the Court has already rejected—they should not be held in civil contempt. Failure to take either action by the deadline may result in the Court holding Defendants in civil contempt. If Defendants contest their contempt, Capconvert may file a motion to recover the attorneys' fees and costs it incurred related to its motion for an order to show cause.

**IT IS SO ORDERED.**

Dated: July 28, 2026

AJAY KRISHNAN
United States Magistrate Judge